WAYNE COUNTY NEIGHBORHOOD LEGAL SERVICES, a Michigan non-profit corporation, Plaintiff–Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY, a foreign insurance corporation, Defendant–Appellee.

No. 91–1874.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1992.

Decided Aug. 4, 1992.

Kathleen McCree Lewis (argued and briefed), Dykema & Gossett, Lawrence C. Patrick, Jr., Yvonne M. Jennings, Patrick, Fields & Preston–Cooper, Detroit, Mich., for plaintiff-appellant.

Mark E. Shreve (argued), David M. Shafer (briefed), Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for defendant-appellee.

Before: MERRITT, Chief Judge; MILBURN; Circuit Judge; and PECK, Senior Circuit Judge

MERRITT, Chief Judge.

Plaintiff appeals the grant of summary judgment for defendant in this action for reimbursement under a directors and officers liability insurance policy. Plaintiff sued to recover costs incurred defending a state court action for wrongful discharge and monies paid pursuant to the consent judgment that resulted. The District Court held that there is no coverage under the policy absent a finding of liability on the part of an officer or director of the corporation and that the consent judgment constitutes an adjudication that the director named in the suit committed no wrongful

act. Consequently, the Court found that, as a matter of law, the defendant insurance company is under no obligation to indemnify the insured under the applicable policy. We hold that the insurance policy does not require a finding of liability; allegations of wrongdoing are sufficient to trigger coverage. Thus, we reverse the judgment of the District Court and remand for further proceedings.

## I.

Wayne County Neighborhood Legal Services ("Legal Services") is a non-profit Michigan corporation that provides legal services to low income residents of Wayne County, Michigan. A twenty-four member Board of Directors governs the corporation. Early in 1984, Legal Services purchased a directors and officers liability and corporation reimbursement policy from the defendant, National Union Fire Insurance Company ("National Union"). The policy went into effect on February 29, 1984 and was prepaid until February 29, 1987.

In June, 1984, Rodney Watts, the former Executive Director of Legal Services, brought a wrongful discharge action against Legal Services, the Board of Directors generally, and Avis Holmes, a member of the Board. Watts based his claims on breach of contract, violations of state open meetings laws, violation of the Whistleblower's Act, and, in allegations specifically directed at Holmes, intentional infliction of emotional distress and defamation of character. Watts asserted that the actions taken by Ms. Holmes were beyond the scope of her authority as a board member of Legal Services.

The action was dismissed on December 22, 1987, pursuant to a settlement agreement between the parties. In the agreement, Holmes and Legal Services disclaimed all liability or wrongdoing and stated that the purpose of the settlement was to resolve a doubtful and disputed claim, but agreed to pay Watts a total of $80,000 as compensation. In the agreement, Holmes reserved the right to seek indemnity against Legal Services and National Un-

ion under the Legal Services officers and directors policy.

After the state court entered the consent judgment, Legal Services submitted a claim to National Union for the payments to Watts and for legal expenses incurred in defending the state suit. Although National Union reimbursed a portion of the legal expenses, it declined full reimbursement of expenses and refused to reimburse any part of the settlement. Consequently, Legal Services brought this suit for reimbursement in state court. By motion of defendant, the case was removed to federal district court.

The District Court held that the officers and directors insurance contract provides no coverage unless there has been a "determination, finding of fact, legal conclusion or other assessment of liability against any officer or director [of Legal Services] for any actions against Watts." There was no finding or admission of liability in the Watts litigation. This led the District Court to conclude that the policy does not provide coverage. Thus it held that National Union was entitled to summary judgment.

Plaintiff argues (1) that the District Court judge misinterpreted the insurance policy to require a determination of officer or director liability and (2) that, contrary to the holding of the District Court, although the consent judgment has res judicata effect between Legal Services and the claimant in the state court proceeding such that the issues may not be relitigated between those parties, it was not an adjudication that the director did not commit a wrongful act with collateral estoppel effect in a case among a different set of parties. Legal Services also asserts that the District Court erred in granting summary judgment for National Union without first resolving the Legal Services motion for disqualification of defendant's counsel. Because we hold that the District Court erred in its finding that the policy requires a determination of officer or director liability to trigger coverage under the policy, we do not need to determine whether the consent judgment has collateral estoppel effect un-

der Michigan law. Neither is it necessary to resolve the dispute surrounding plaintiff's motion to disqualify counsel.

## II.

In its primary assignment of error, Legal Services asserts that the District Court erroneously interpreted the policy to require, as a condition for coverage, a determination that a director or officer of Legal Services was liable to the plaintiff in the underlying litigation. Legal Services argues that the policy covers allegations of wrongdoing brought against a director and that no legal finding of wrongdoing is necessary to trigger coverage under the policy. For this court to hold otherwise, contends the plaintiff, would be counter-productive to fostering settlement.

 National Union disagrees with Legal Services' interpretation of the contract and also argues that Legal Services did not make this argument below so as to preserve it for appellate review. The plaintiff was unprepared at the summary judgment phase of the proceedings below and failed to submit a brief in opposition to the defendant's motion for summary judgment. Nonetheless, the plaintiff did appear and argue against the defendant's motion at the summary judgment hearing. A review of the transcript from that hearing shows that at a very minimum plaintiff's counsel pointed out the provisions of the insurance contract on which it now bases its argument.[1] Therefore, we find no merit to the defendant's claim that this argument was waived.[2]

In its opinion, the District Court quotes from several provisions of the contract which explicitly state that the policy covers claims against the officers and directors of the company only for wrongful acts and only if the claimant is entitled to indemnification from Legal Services. Under the terms of the consent judgment, Director Holmes disclaimed any wrongdoing. Thus, the District Court concluded that Holmes had not committed a wrongful act and was not entitled to indemnification from Legal Services. The Court neglects, however, to reference the definition of "wrongful act" provided in the contract. Legal Services relies on this definition to support its argument that mere allegations of wrongdoing are sufficient to trigger coverage under the policy.

The insuring clause of the policy states:

This policy shall ... pay on behalf of the Company ... loss (as hereinafter defined) arising from any claim or claims ... against each and every person, jointly or severally, who was or now is or may hereafter be a Director or Officer (as herein defined) of the Company, *by reason of any Wrongful Act (as hereinafter defined)* in their respective capacities as Directors or Officers of the Company.

(emphasis added). The policy then defines "Wrongful Act" as:

... any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the Directors or Officers *or any of the foregoing so alleged by any claimant* or any matter claimed against them solely by reason of there being such Directors or Officers.

---

**1.** At the summary judgment hearing the Court asked plaintiff's counsel to agree that the insurance company is required to indemnify Legal Services under the policy only if there is a judgment finding a director liable. Plaintiff's counsel responded, saying: "I believe ... that they're required to indemnify for all losses incurred in the maintenance ... of a lawsuit where any ... *claim of wrongdoing* is made against an officer or director." *See* Motion for Summary Judgment Transcript, No. 90–71536, at 27–28 (E.D.Mich. June 14, 1991) (emphasis added).

**2.** Even if the plaintiff had not raised the issue below, it is proper for an appellate court to exercise its discretion to resolve issues for the first time on appeal when as here the issue presented is purely one of law and does not depend on the factual record below. *See Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985). It is relevant here that defendant cannot claim surprise. Plaintiff's argument is based exclusively on the language of the contract for insurance. The meaning of that language was clearly in dispute below; therefore, we find that this is not a case involving waiver.

(emphasis added). Plaintiff's point is well taken here. To interpret the policy to require a legal finding of liability circumvents critical language of the policy. In addition, such a narrow interpretation of what constitutes a "wrongful act," even if supported by the language of the policy, would be unwise because it would tend to discourage settlement.

National Union does not directly dispute the assertion by Legal Services that the contract covers allegations of wrongdoing. It restates the holding of the District Court that the policy only covers actual wrongful acts, but does not address the language identified by Legal Services as controlling the definition of such acts. Instead, National Union argues that, assuming this Court chooses to review the question at all, Legal Services is not entitled to collect under the policy because (1) Legal Services is estopped from asserting in the Watts litigation that Holmes never committed any wrongful acts and was not liable to the plaintiff in that case and then seeking indemnity from National Union under a policy that only covers wrongful acts; (2) that, even if Holmes committed a wrongful act, she did so outside the scope of her authority and thus not in her capacity as director under the policy; and (3) that the director must incur actual loss before she is entitled to indemnification by Legal Services.

■ We have already rejected the first argument by holding that this is not a case involving waiver. In its second objection, National Union argues that Legal Services is not entitled to indemnification because the complaint alleged that the actions taken by Holmes were outside the scope of her authority as a director. The insurance policy covers only actions taken by officers and directors "in their respective capacities as [d]irectors or [o]fficers." Here National Union equates the director's "capacity as director" with her "authority as director." Plainly a director may take actions in her capacity as director that are not within her authority to take. The real question is whether, if she does so, she is "entitled to indemnification by the Company," as the policy requires before reimbursement is due. The answer to this question is a mixture of fact and law not suitable for summary judgment. It is further complicated by the settlement of the underlying case. It is possible that the District Court may have to relitigate the claim against Holmes before the indemnification question can be answered.

■ In its third objection, National Union relies on language in the policy which states that Legal Services is entitled to indemnification under the policy "only when the [d]irectors or [o]fficers shall have been entitled to indemnification by the company." National Union argues that Director Holmes was never entitled to indemnification by Legal Services because she never incurred any actual loss. Instead, Legal Services paid the entire judgment. Its argument ignores the fact that Holmes was liable for the judgment jointly with Legal Services.[3] In the Settlement Agreement, Holmes reserved her right to seek indemnity against both Legal Services and National Union.

As before, the significant question is whether Legal Services was obligated to indemnify Holmes. Perhaps Holmes was not entitled to indemnification; that is impossible to determine from the information provided and would become a question of fact at trial. Nevertheless, Legal Services chose to indemnify her up front then pursue reimbursement under the insurance policy. The argument that for Holmes to be entitled to indemnification she must actually write the settlement check is unpersuasive.

### III.

In sum, we find that the plain language of the insurance contract provides for cov-

---

**3.** This argument essentially talks form rather than substance. From the record it is evident that Holmes was jointly liable for the funds. It does not make sense that the policy would cover loss if Holmes had written the settlement check from her own funds and immediately been reimbursed by Legal Services, but not cover the loss if Legal Services pays the settlement for Holmes.

erage in the event of allegations of wrongdoing by the corporation's officers or directors. Thus, on the question of whether the insurance company must indemnify Legal Services, National Union is not entitled to judgment as a matter of law. We REVERSE the judgment of the District Court and REMAND for further proceedings.[4]

---

**4.** Motions by the defendant to strike portions of the reply brief and to impose sanctions are currently pending. We deny both motions.